[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11436

_____

D.C. Docket No. 1:12-cv-20123-MGC

HUMANA MEDICAL PLAN, INC.,

Plaintiff - Appellee,

versus

WESTERN HERITAGE INSURANCE COMPANY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 8, 2016)

Before WILLIAM PRYOR, BLACK and PARKER,[*] Circuit Judges.

BLACK, Circuit Judge:

---

[*] Honorable Barrington D. Parker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

Defendant Western Heritage Insurance Co. (Western) appeals the district court's order granting summary judgment in favor of Plaintiff Humana Medical Plan, Inc. (Humana) on Humana's claims for double damages pursuant to the Medicare Secondary Payer Act (MSP) private cause of action, 42 U.S.C. § 1395y(b)(3)(A), and for a declaratory judgment regarding Western's obligation to reimburse Humana for Medicare benefits that Humana paid on behalf of its Medicare Advantage plan enrollee.  This case requires the Court to decide as a matter of first impression in this circuit whether the MSP private cause of action permits a Medicare Advantage Organization (MAO) to sue a primary payer that refuses to reimburse the MAO for a secondary payment.  The Third Circuit previously considered this issue and concluded that an MAO may sue a primary payer under the MSP private cause of action.  *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 367 (3d Cir. 2012).  After review, we agree with the Third Circuit and affirm the order of the district court.

## I.  BACKGROUND

Humana operates as an MAO, providing Medicare Part C coverage (also known as a Medicare Advantage plan) to Medicare-eligible enrollees and receiving in return a per capita fee from the Centers for Medicare & Medicaid Services (CMS).  In January 2009, Mary Reale, a Humana Medicare Advantage plan enrollee, was injured at Hamptons West Condominiums.  Ms. Reale sought

medical treatment for her injury, and her medical providers billed Humana. Humana paid $19,155.41.

In June 2009, Ms. Reale and her husband sued Hamptons West Condominium Association, Inc. (Hamptons West) in Florida state court for her injury. In March 2010, while the Reales' suit was pending and in light of a pending settlement between Hamptons West and the Reales, Humana issued to Ms. Reale an Organization Determination in the amount of $19,155.41. The basis for Humana's reimbursement request was the MSP, under which Medicare payments are secondary and reimbursable if any other insurer—even a tortfeasor's liability insurer—is liable. *See* 42 U.S.C. § 1395y(b)(2); *see also id.* § 1395w-22(a)(4). Although an administrative appeal process was available, no party appealed Humana's Organization Determination.

On April 20, 2010, in return for $115,000 from Hamptons West and its liability insurer, Western, the Reales released Hamptons West and Western. The Reales represented in the settlement agreement that there was no Medicare or other lien or right to subrogation. The Reales also agreed to indemnify Hamptons West and Western against any Medicare or other lien or right to subrogation.

On May 7, 2010, Humana sued the Reales and their attorney in the Southern District of Florida seeking reimbursement of the $19,155.41. On the defendants' motion, the district court dismissed Humana's complaint for lack of subject matter

3

jurisdiction, holding that an MAO does not have a private cause of action to recover reimbursement from a beneficiary under the MSP. The district court later vacated its order after Humana moved the district court to correct or amend the order. The district court scheduled a hearing to consider Humana's motion. On the date of the hearing, Humana voluntarily dismissed its action against the Reales and their attorney.

Perhaps in response Humana's suit, Western and Hamptons West attempted to make Humana a payee on the settlement draft to the Reales. The Reales refused and on May 25, 2010 sought sanctions against Hamptons West for failing to comply with the settlement agreement. Thereafter, Hamptons West agreed to a stipulated order under which Humana would not be a payee on the check, but the Reales' attorney would hold $19,155.41 in trust pending resolution of the Reales' litigation. Hamptons West and Western tendered the $115,000.

On June 4, 2010, the Reales sued Humana in state court seeking a declaration as to the amount they owed Humana. Applying Florida law regarding collateral indemnity and subrogation, the trial court held that Humana was entitled to $3,685.03. *See Humana Med. Plan, Inc. v. Reale*, 180 So. 3d 195, 199 (Fla. 3d DCA 2015). Humana appealed, and in December 2015, Florida's Third District Court of Appeal reversed for lack of jurisdiction. *Id.* at 197, 199. The court held that the Medicare Act creates an exclusive federal administrative process under

4

which a Medicare Advantage plan enrollee appeals through CMS an MAO's denial of benefits or request for reimbursement. *Id.* at 204–05. Upon exhaustion of the administrative process, the Medicare Act provides for federal judicial review and expressly preempts state law. *Id.* Therefore, according to the court, Florida courts lack jurisdiction to adjudicate the dispute between Humana and Ms. Reale regarding her Medicare Advantage plan benefits. *Id.* at 209.

Having failed to secure reimbursement from Ms. Reale, in December 2011, Humana demanded that Western reimburse Humana's secondary payment. On January 11, 2011, Humana sued Western in the action upon which this appeal proceeds. Humana pled three counts: Count One sought double damages under the MSP private cause of action, 42 U.S.C. § 1395y(b)(3)(A); Count Two sought declaratory relief under the Medicare statutory and regulatory scheme; and Count Three sought damages under several state law theories including unjust enrichment and a contract implied by law. Western moved to dismiss, arguing among other things that the MSP does not permit an MAO to bring a private cause of action. In an endorsed order, the district court denied Western's motion in part, dismissing the state law claims but finding that Humana had adequately pled a question regarding whether the MSP private cause of action is available to an MAO.

On December 29, 2014, Humana moved for summary judgment. On March 16, 2015, the district court granted summary judgment in favor of Humana, finding

5

that the MSP private cause of action is available to an MAO and that Humana is entitled to double damages, $38,310.82. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 94 F. Supp. 3d 1285 (S.D. Fla. 2015). The district court entered judgment in favor of Humana, and Western appealed.

## II. STANDARD OF REVIEW

We review *de novo* a grant or denial of summary judgment, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Bridge Capital Inv'rs, II v. Susquehanna Radio Corp.*, 458 F.3d 1212, 1215 (11th Cir. 2006). "Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hallmark Developers, Inc. v. Fulton Cty., Ga.*, 466 F.3d 1276, 1283 (11th Cir. 2006); *see also* Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Before considering whether the MSP private cause of action is available to an MAO on these facts and, if so, whether Humana was entitled to summary judgment, we first introduce the Medicare Act, the MSP, the Medicare Advantage program, and pertinent CMS regulations.

### A. *Statutory and Regulatory Background*

Traditional Medicare consists of Parts A and B of the Medicare Act. These are the fee-for-service provisions entitling eligible persons to have CMS directly

pay medical providers for their hospital and outpatient care. Part C is the Medicare Advantage program under which Medicare-eligible persons may elect to have an MAO (rather than CMS) provide Medicare benefits. Part D provides for prescription drug coverage, and Part E contains generally applicable definitions and exclusions. One such exclusion is the MSP.

### 1. The MSP

Frequently, more than one insurer is liable for an individual's medical costs. For example, a car accident victim may be entitled to recover medical expenses from both her health insurer and a tortfeasor's liability insurer. To address such situations, the MSP allocates liability between Medicare and other insurers, known as "primary plans."[1]

Before 1980, "Medicare paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained." *Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011). In effect, when Medicare and a private insurer were both liable for the same expenses, Medicare satisfied or partially satisfied the private insurer's obligation. In 1980, in an effort to curb the rising costs of Medicare, Congress enacted the MSP, which "inverted that system; it made private

---

[1] A "primary plan" is a group health plan, worker's compensation plan or law, automobile or other liability insurance policy or plan, no-fault insurance, or self-insured plan that has made or can reasonably be expected to make payment for an item or service. 42 U.S.C. § 1395y(b)(2)(A).

7

insurers covering the same treatment the 'primary' payers and Medicare the 'secondary' payer." *Id.* Medicare benefits became an entitlement of last resort, available only if no private insurer was liable.

The MSP, 42 U.S.C. § 1395y(b), is located in Part E of the Medicare Act. Paragraph (1) creates rules regarding group health plans. *Id.* § 1395y(b)(1). Paragraph (2) establishes Medicare's status as a secondary payer to a primary plan. Paragraph (2)(A) is a general prohibition against making Medicare payments for items or services for which a primary plan has paid or can reasonably be expected to pay. *Id.* § 1395y(b)(2)(A). Paragraph (2)(B), entitled "Conditional payment" and cross-referenced as the sole exception to paragraph (2)(A), describes the circumstances and procedures under which Medicare can make a conditional payment notwithstanding its status as secondary payer. *Id.* § 1395y(b)(2)(B).

Under paragraph (2)(B), when the primary plan does not fulfill its duties, the Secretary of Health & Human Services may make a payment conditioned on reimbursement. *Id.* § 1395y(b)(2)(B)(i). If the Secretary makes a conditional payment, the primary plan must reimburse the Secretary. *Id.* § 1395y(b)(2)(B)(ii). Paragraph (2)(B) also establishes and defines a Government cause of action to recover from a primary plan. *Id.* § 1395y(b)(2)(B)(iii); *see also* 42 C.F.R. § 411.24 (describing a Government cause of action against a primary plan or any other person that received a primary payment). The remaining portions of

8

paragraph (2)(B) establish the United States' subrogation rights in the event of a secondary payment, § 1395y(b)(2)(B)(iv), permit the Secretary to waive the conditional payment rules under some circumstances, § 1395y(b)(2)(B)(v), establish a limitations period, § 1395y(b)(2)(B)(vi), and create a disclosure mechanism to help primary plans determine whether they owe a reimbursement, § 1395y(b)(2)(B)(vii).  Paragraph (2)(B) does not mention MAOs and refers almost exclusively to the Secretary, the United States, and the Medicare trust fund.

Paragraph (3)(A), entitled "Private cause of action," states as follows:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A).  The MSP private cause of action is not a *qui tam* statute but is available to a Medicare beneficiary whose primary plan has not paid Medicare or the beneficiary's healthcare provider.  *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234 (11th Cir. 2009); *see also Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1310 (11th Cir. 2006) (explaining that the MSP private cause of action is available "against a primary plan that pays a judgment or settlement to a Medicare beneficiary, but fails to pay Medicare its share").  The Sixth Circuit holds that the MSP private cause of action is also available to a healthcare provider who has not been paid by a primary plan.  *Mich.*

9

*Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787, 790 (6th Cir. 2014).  Although we have not explicitly addressed the issue, our case law implicitly supports the proposition.  *Cf. Glover*, 459 F.3d at 1307 (suggesting the MSP private cause of action was intended "to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights").

### 2.  *The Medicare Advantage program*

Part C, also known as the Medicare Advantage program,[2] was enacted in 1997, 17 years after the MSP and 11 years after the MSP private cause of action.[3] "Congress's goal in creating the Medicare Advantage program was to harness the power of private sector competition to stimulate experimentation and innovation that would ultimately create a more efficient and less expensive Medicare system." *In re Avandia*, 685 F.3d at 363 (citing H.R. Rep. No. 105-217, at 585 (1997), 1997 U.S.C.C.A.N. 176, 205-06 (Conf. Rep.)).  Under the Medicare Advantage program, a private insurance company, operating as an MAO, administers the provision of Medicare benefits pursuant to a contract with CMS.  CMS pays the MAO a fixed fee per enrollee, and the MAO provides at least the same benefits as

---

[2] The Medicare Advantage program was originally called Medicare+Choice.

[3] *See* Pub. L. No. 105-33, § 4001, 111 Stat. 251 (codified as amended at 42 U.S.C. §§ 1395w-21–1395ww-28); Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (codified as amended at 42 U.S.C. § 1395y(b); Pub. L. No. 96-499, § 953, 94 Stat. 2599 (codified as amended at 42 U.S.C. § 1395y(b)).

an enrollee would receive under traditional Medicare. *See* 42 U.S.C. §§ 1395w-22(a), 1395w-23.  In 2015, 31% of Medicare-eligible individuals were enrolled in a Medicare Advantage program. *Medicare Advantage Enrollees as a Percent of Total Medicare Population*, Henry J. Kaiser Family Foundation, http://kff.org/medicare/state-indicator/enrollees-as-a-of-total-medicare-population (last visited August 8, 2016).  This percentage has risen every year since 2004. *See id.*

Part C includes a reference to the MSP, entitled "Organization as secondary payer," which states as follows:

> Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section--
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4).  In several cases, an MAO has contended that § 1395w-22(a)(4), sometimes called the MAO "right-to-charge" provision, creates an implied federal cause of action for an MAO to recover secondary payments, but courts have rejected this argument.  *See, e.g.*, *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1153, 1154 (9th Cir. 2013) (explaining that the MAO right-to-

11

charge provision "describes when MAO coverage is secondary to other insurance, and permits (but does not require) a[n] MAO to include in its plan provisions allowing recovery against a primary plan . . . . [It] does not create a federal cause of action in favor of a[n] MAO"); *Care Choices HMO v. Engstrom*, 330 F.3d 786, 790 (6th Cir. 2003) (reaching a similar conclusion as to 42 U.S.C. § 1395mm(e)(4), which addresses secondary payment by Medicare-substitute HMOs); *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F. Supp. 2d 565, 571–72 (E.D. Pa. 2004) (concurring with *Care Choices HMO* as to both the HMO and the MAO provision).

## B.  An MAO's Rights Under the MSP

In this case, Humana contends that an MAO can sue a primary plan under the MSP private cause of action, which is available "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."  42 U.S.C. § 1395y(b)(3)(A). Humana's contention appears to comport with CMS regulations, which provide that an MAO "will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter."  42 C.F.R. § 422.108(f).  Under subpart B of part 411 of chapter 42, CMS regulations identify two causes of action available to the Secretary:  one against a primary payer and one against any entity (including

12

a beneficiary) that receives a primary payment.  42 C.F.R. §§ 411.24(e), 411.24(g).

Thus, according to CMS, an MAO may sue a primary plan or an MAO beneficiary

(among others) under the MSP.

Although the Secretary believes MAOs may sue in federal court to recover

reimbursement from a primary plan, MAOs have no cause of action absent a

statutory basis.  *See Alexander v. Sandoval*, 532 U.S. 275, 286–87, 121 S. Ct.

1511, 1519–20 (2001).  Humana does not contend that the MAO right-to-charge

provision creates an implied cause of action.  Nor does Humana contend that an

MAO may avail itself of § 1395y(b)(2)(B)(iii), the Government's cause of action.

Rather, Humana argues that the MSP private cause of action is unambiguous and

broadly permits any private party with standing (including an MAO) to sue a

primary plan.  The district court concurred with the Third Circuit's analysis of the

MSP private cause of action and held that "[t]he statutory text of the MSP Act

clearly indicates that MAOs are included within the purview of parties who may

bring a private cause of action."  We agree.

The United States Supreme Court recently described our threshold analysis

in statutory interpretation as follows:

> If the statutory language is plain, we must enforce it according to its
> terms.  But oftentimes the meaning—or ambiguity—of certain words
> or phrases may only become evident when placed in context.  So
> when deciding whether the language is plain, we must read the words
> in their context and with a view to their place in the overall statutory

scheme.  Our duty, after all, is to construe statutes, not isolated provisions.

*King v. Burwell*, __ U.S. __, 135 S. Ct. 2480, 2489 (2015) (quotation marks and citations omitted).  We therefore read the MSP private cause of action in the context of the broader Medicare Act.

The MSP private cause of action is available "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."  42 U.S.C. § 1395y(b)(3)(A). Paragraph (1) regulates group health plans and is not at issue in this case.  *See id.* § 1395y(b)(1).  Paragraph (2)(A) defines "primary plan" and bars any Medicare payment—including an MAO payment—when there is a primary plan.  *See id.* § 1395y(b)(2)(A).  The sole exception to the prohibition in paragraph (2)(A) is the conditional payment scheme in paragraph (2)(B).  *See id*.

Although paragraph (2)(A) does not expressly obligate primary plans to make payments, the defined term "primary plan" presupposes an existing obligation (whether by statute or contract) to pay for covered items or services. *See id*.  Therefore, a primary plan "fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraph[] . . . (2)(A)," when it fails to honor the underlying statutory or contractual obligation.

Thus, the three paragraphs work together to establish a comprehensive MSP scheme.  Paragraph (2)(A) alters the priority among already-obligated entities and

14

contemplates primary plans fulfilling their payment obligation.  Paragraph (2)(B) addresses the Secretary's options when a primary plan fails to fulfill its payment obligation.  Paragraph (3)(A), the MSP private cause of action, grants private actors a federal remedy when a primary plan fails to fulfill its payment obligation, thereby undermining the secondary-payer scheme created by paragraph (2)(A).

We must now consider how an MAO fits within the MSP scheme and whether an MAO may avail itself of the MSP private cause of action in paragraph (3)(A).  Western suggests that the MSP does not govern MAOs at all and that the MAO right-to-charge provision instead governs when and whether an MAO is a secondary payer.  According to Western, because an MAO derives secondary payer status from the MAO right-to-charge provision rather than the MSP, an MAO may not sue under the MSP private cause of action.

We reject Western's reading as contrary to the plain language of the pertinent provisions.  First, paragraph (2)(A) unambiguously refers to all Medicare payments, which include both traditional Medicare and Medicare Advantage plans. *See In re Avandia*, 685 F.3d at 360; 42 U.S.C. § 1395y(b)(2)(A) (regulating "[p]ayment under this subchapter").  Second, the MAO right-to-charge provision parenthetically refers to circumstances under which MAO payments are "made secondary *pursuant to* section 1395y(b)(2)."  42 U.S.C. § 1395w-22(a)(4) (emphasis added).  A plain reading of paragraph (2)(A) and the MAO right-to-

15

charge provision therefore reveals that MAO payments are made secondary to primary payments pursuant to the MSP, not the MAO right-to-charge provision. This alone suggests that the MSP does not limit the cause of action in paragraph (3)(A) to cases in which traditional Medicare is the secondary payer.

The fact that paragraph (2)(B), the sole exception to paragraph (2)(A), refers to the Secretary does not alter our analysis. *See id.* § 1395y(b)(2)(B) (authorizing the Secretary to make conditional payment when a primary plan "has not made or cannot reasonably be expected to make [prompt] payment"). Even if paragraph (2)(B) does not apply to MAOs,[4] neither paragraph (2)(A) nor paragraph (3)(A) contain the limiting language found in paragraph (2)(B). Paragraph (2)(A) establishes secondary payer status for all Medicare and defines "primary plan" with reference to pre-existing obligations. Thus, a primary plan that fails to make primary payment has failed to do so "in accordance with paragraphs (1) and (2)(A)," regardless of whether the secondary payer is the Secretary or an MAO. *Id.* § 1395y(b)(3)(A).

Western Heritage does not dispute that an MAO may make a secondary payment. The MAO right-to-charge provision confirms this right. *See id.*

---

[4] The parties do not argue and we do not consider whether the Government cause of action described in paragraph (2)(B) was intended to be available to MAOs. *See In re Avandia*, 685 F.3d at 364 n.18 ("Because Congress clearly intended there to be parity between MAOs and traditional Medicare, we find additional support for our decision in § 1395y(b)(2)(B)(iii), the government's cause of action for recovery from primary payers, which also provides for double damages."); 42 C.F.R. § 411.108(f) ("The [MAO] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations . . . .").

§ 1395w-22(a)(4) (establishing an MAO's right to charge a plan "under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2)").  Fulfilling our duty to "read the words in their context and with a view to their place in the overall statutory scheme" and to "construe statutes, not isolated provisions," *King*, 135 S. Ct. at 2489, we note that other aspects of the Medicare Act indicate an MAO *must* make a secondary payment any time the Secretary would do so.  An MAO's payment obligation under Part C is coextensive with that of the Secretary under Parts A and B.  *See* 42 U.S.C. § 1395w-22(a)(1)(A) (An MAO "shall provide" its enrollees with the benefits to which they would be entitled under traditional Medicare.); *id.* § 1395w-22(a)(2)(A) (An MAO satisfies § 1395w-22(a)(1)(A) if it "provides payment in an amount . . . equal to at least the total dollar amount of payment . . . as would otherwise be authorized under parts A and B . . . .").  In other words, if the Secretary would pay "X" amount for covered service "Y," then an MAO must also pay "X" amount for covered service "Y."  *See id*.  Thus, Part C of the Medicare Act prohibits an MAO's avoiding paying benefits whenever the Secretary would pay under traditional Medicare.  Collectively, these provisions clarify that Congress empowered (and perhaps obligated) MAOs to make secondary payments under the same circumstances as the Secretary.  *See id.* §§ 1395w-22(a)(1)(A), 1395w-

17

22(a)(2)(A), 1395w-22(a)(4).  Thus, an MAO both has secondary payer status and can make reimbursable secondary payments.

We conclude that paragraph (3)(A), the MSP private cause of action, permits an MAO to sue a primary plan that fails to reimburse an MAO's secondary payment.  Paragraph (3)(A) is broadly available "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."  42 U.S.C. § 1395y(b)(3)(A).  We have held that paragraph (3)(A) is not a *qui tam* statute but is instead available only when the plaintiff has suffered an injury in fact.  *See Stalley*, 524 F.3d at 1234.  Neither the MSP nor our case law places any other restriction on the class of plaintiffs to whom the MSP private cause of action is available.  *But see Harris Corp. v. Humana Health Ins. Co. of Fla., Inc.*, 253 F.3d 598, 605–06 n.5 (11th Cir. 2001) (affirming dismissal of a claim under § 1395y(b)(3)(A) because the dispute involved priority between two non-Medicare health insurance plans).

We see no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations.  As stated above, the MSP applies to MAOs.  An MAO has a statutory right to charge a primary plan when an MAO payment is made secondary pursuant to the MSP.  42 U.S.C. § 1395w-22(a)(4); *see also* 42 C.F.R. § 422.108 (elaborating upon an MAO's right to charge

18

a primary plan and means of recovering a secondary payment).  In such a case, the primary plan's failure to make primary payment or to reimburse the MAO causes the MAO an injury in fact.  Therefore, an MAO may avail itself of the MSP private cause of action when a primary plan fails to make primary payment or to reimburse the MAO's secondary payment.

## C.  *Humana's Entitlement to Summary Judgment*

Having found that Humana may bring its claim under the MSP private cause of action, we must decide whether Humana was entitled to summary judgment in its favor on the claim.  The MSP private cause of action permits an award of double damages when a primary plan fails to provide for primary payment or appropriate reimbursement.  42 U.S.C. § 1395y(b)(3)(A).  Thus, a plaintiff is entitled to summary judgment on a § 1395y(b)(3)(A) claim when there is no genuine issue of material fact regarding (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount.  We agree with the district court that Western is a primary plan under § 1395y(b)(2)(A) because it is a liability insurer that, under a settlement agreement, paid Ms. Reale, a Medicare Advantage plan enrollee, for covered medical expenses.  We discuss the second and third elements in turn below.

19

Western argues that it did not fail to provide for payment or appropriate reimbursement because Western (1) lacked constructive knowledge that Medicare made a payment; and (2) attempted to make Humana a payee on the settlement check but was ordered instead to pay $19,155.41 into trust pending resolution of a dispute regarding the amount of Humana's entitlement.  As the district court noted, Western's second argument forecloses its first.  Western's attempt to list Humana as a payee on the settlement check indicates that Western knew of Humana's lien. Western seeks to evade this conclusion by asserting its ignorance of Humana's status as an MAO.  We see no value in this distinction.  Western had actual knowledge of Humana's claim, and as a settling party in tort litigation, Western had the ability to discern the precise nature of Ms. Reale's health insurance coverage.  *See* Fla. R. Civ. P. 1.280(b)(2) ("A party may obtain discovery of the existence and contents of any agreement under which any person may be liable to satisfy part or all of a judgment that may be entered in the action or to indemnify or to reimburse a party for payments made to satisfy the judgment."); 42 C.F.R. § 422.108(b)(3) (requiring MAOs to coordinate benefits with primary payers); *cf. United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 901 (11th Cir. 2003) ("[W]hen the primary insurer later pays, Medicare's prior payment will normally be a matter of ascertainable fact.").  Western therefore had constructive knowledge of Humana's Medicare payment.

20

We reject Western's contention that it provided for appropriate reimbursement by placing $19,155.41 into trust pending resolution of the dispute between Ms. Reale and Humana.  The MSP private cause of action does not describe what constitutes "appropriate reimbursement."  We therefore seek guidance from the CMS regulations.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782 (1984) (When "the legislative delegation to an agency on a particular question is implicit rather than explicit," we "may not substitute [our] own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

If a beneficiary or other party fails to reimburse Medicare within 60 days of receiving a primary payment, the primary plan "must reimburse Medicare even though it has already reimbursed the beneficiary or other party."  42 C.F.R. § 411.24(i)(1).  This regulation applies equally to an MAO.  *See id.* § 422.108(f).  Thus, Western's payment to Ms. Reale or any other party is insufficient to extinguish its prospective reimbursement obligation to Humana.  Sixty days after Western tendered the settlement to the Reales and their attorney, because no party reimbursed Humana, Western became obligated to directly reimburse Humana.  *See id.* § 411.24(i)(1).  Even after receiving Humana's demand for reimbursement, Western has declined to do so.  Therefore, Western failed to provide for "appropriate reimbursement" as defined by the CMS regulations.

21

Western also disputes the damages amount, contesting both the amount of Humana's reimbursement entitlement and the appropriateness of double damages. Before Western settled with the Reales, Humana issued to Ms. Reale an Organization Determination for $19,155.41.  Ms. Reale was entitled to administratively appeal that amount but did not.  *See* 42 U.S.C. § 1395w-22(g). The amount that Humana may recover is therefore fixed, at least as to Ms. Reale. *See* 42 C.F.R. § 422.576.  Even if Western retains the right to dispute the amount, its argument regarding Ms. Reale's procurement costs lacks merit.  A beneficiary's procurement costs do not offset an MAO's recovery if the MAO must litigate to secure repayment.  *See* 42 C.F.R. §§ 411.37(e), 422.108(f).  This is the third lawsuit in which Humana has attempted to recover its $19,155.41 secondary payment.  Therefore, Humana may recover the full amount.

Finally, we agree with the district court that double damages are required by statute.  Unlike the Government's cause of action, the private cause of action uses the mandatory language "shall" to describe the damages amount.  *Compare* 42 U.S.C. § 1395y(b)(2)(B)(iii) ("The United States *may* . . . collect double damages . . . ." (emphasis added)) *with* 42 U.S.C. § 1395y(b)(3)(A) (Damages "*shall* be in an amount double the amount otherwise provided." (emphasis added)); *see also Baxter Int'l, Inc.*, 345 F.3d at 905.  Therefore, the district court correctly

22

ordered Western to reimburse Humana $38,310.82, double the amount to which Humana was otherwise entitled.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Humana.

**AFFIRMED.**

WILLIAM PRYOR, Circuit Judge, dissenting:

Medicare is governed by a notoriously complex statute, but a brief summary of the four provisions relevant to this appeal reveals why Humana failed to state a claim. Section 1395y(b)(3)(A) creates "a private cause of action . . . in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) *in accordance with paragraphs (1) and (2)(A)*." 42 U.S.C. § 1395y(b)(3)(A) (emphasis added). Paragraph (2)(A) prohibits "[p]ayment under this subchapter . . . except as provided in subparagraph (B)." *Id.* § 1395y(b)(2)(A). Subparagraph (B) empowers the Secretary of Health and Human Services to make payments conditioned on reimbursement of the Medicare Trust Funds, but it says nothing about Medicare Advantage Organizations. *See id.* § 1395y(b)(2)(B). Medicare Advantage Organizations instead charge primary plans in accordance with section 1395w-22(a)(4). Because Humana is not the Secretary and its coffers are not the Trust Funds, it cannot seek payment or reimbursement "in accordance with paragraphs (1) and (2)(A)." For that reason, section 1395y(b)(3)(A) creates no private cause of action for a Medicare Advantage Organization. I respectfully dissent.

The scope of section 1395y(b)(3)(A) is limited by its references to paragraphs (1) and (2)(A). Paragraph (1) generally prohibits group health plans and large group health plans from denying benefits on the ground that an individual is

24

eligible for Medicare Part A. *See id.* § 1395y(b)(1). Paragraph (2)(A) forbids the

Secretary from making payments when an insurance policy has paid, or can

reasonably be expected to pay, with one exception:

> Payment under this subchapter may not be made, *except as provided in subparagraph (B)*, with respect to any item or service to the extent that—
> . . .
> (ii) payment has been made or can reasonably be expected to be made . . . under a . . . liability insurance policy or plan (including a self-insured plan) . . . .
>
> In this subsection, the term "primary plan" means a . . . liability insurance policy or plan (including a self-insured plan) . . . to the extent that clause (ii) applies.

*Id.* § 1395y(b)(2)(A) (emphasis added). The one exception—"except as provided

in subparagraph (B)"—applies to a payment by the Secretary conditioned on

reimbursement of the Trust Funds:

> **(i) Authority to make conditional payment**
>
> The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.
>
> **(ii) Repayment required**
>
> Subject to paragraph (9), a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such

25

primary plan has or had a responsibility to make payment with respect to such item or service.

*Id.* § 1395y(b)(2)(B)(i)–(ii). Subparagraph (B) also gives the Secretary a cause of action to recover reimbursement against primary plans, *id.* § 1395y(b)(2)(B)(iii), and subrogates the United States to any right to payment under a primary plan, *id.* § 1395y(b)(2)(B)(iv).

A Medicare Advantage Organization receives no authority from paragraphs (1) and (2)(A). Paragraph (1) addresses the case of a group health plan or a large group health plan that denies benefits because an individual is eligible for Medicare Part A. Paragraph (2)(A) refers to subparagraph (B), which repeatedly and exclusively refers to the Secretary and the Trust Funds: "[t]he Secretary may make payment," "[a]ny such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund," "an entity that receives payment from a primary plan[] shall reimburse the appropriate Trust Fund for any payment made by the Secretary," and "[i]f reimbursement is not made to the appropriate Trust Fund . . . the Secretary may charge interest." *Id.* § 1395y(b)(2)(B). A Medicare Advantage Organization is not the Secretary, and it does not make payments out of the Trust Funds. As a result, it cannot seek payment or reimbursement in accordance with paragraph (2)(A).

A separate provision, section 1395w-22(a)(4), gives Medicare Advantage Organizations the power to charge an insurer "under circumstances in which

payment under this subchapter is made secondary pursuant to section 1395y(b)(2)":

> Notwithstanding any other provision of law, a [Medicare Advantage] organization may (in the case of the provision of items and services to an individual under a [Medicare Advantage] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—

> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services . . . .

*Id.* § 1395w-22(a)(4). Section 1395w-22(a)(4) mentions section 1395y(b)(2), but the cross-reference "simply explains when MAO coverage is secondary to a primary plan . . .—that is, under the same circumstances when insurance through traditional Medicare would be secondary." *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1154 (9th Cir. 2013). It does not subject Medicare Advantage Organizations to all of the parts of section 1395y(b)(2). Instead, it establishes a different regulatory regime—one that does not require Medicare Advantage Organizations to be secondary payers, impose time limits on reimbursement, require demonstrated responsibility, establish an extensive administrative process, give the Secretary a cause of action, or subrogate the United States to any right to payment by a primary plan. A Medicare Advantage Organization charges primary plans in accordance with section 1395w-22(a)(4), not section 1395y(b)(2)(A).

27

The majority agrees with the Third Circuit in *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 685 F.3d 353 (3d Cir. 2012), that section 1395y(b)(3)(A) is "a broadly worded provision," Majority Op. at 19, but the majority and the Third Circuit fail to take into account the phrase "in accordance with paragraphs (1) and (2)(A)." Nothing in section 1395y(b) addresses the coordination of benefits with a Medicare Advantage Organization. A Medicare Advantage Organization instead is paid "in accordance with" section 1395w-22(a)(4).

The majority also observes that Humana's position "appears to comport with CMS regulations, which provide that an MAO 'will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter,'" Majority Op. at 13 (quoting 42 C.F.R. § 422.108(f)), but the majority fails to explain how it does so. Humana sued under section 1395y(b)(3)(A), which creates "a private cause of action." The Secretary cannot avail herself of a private cause of action in her official capacity. She instead must sue under the official cause of action in section 1395y(b)(2)(B)(iii). But section 1395y(b)(2)(B)(iii) does not allow Humana, a private party, to sue. The regulation cited by the majority does not interpret section 1395y(b)(3)(A), and it certainly cannot rewrite the clear text of that section.

28

Finally, the majority is incorrect that "an MAO *must* make a secondary payment any time the Secretary would do so." Majority Op. at 17–18. With certain exceptions, section 1395w-22 requires a Medicare Advantage Organization to provide the same benefits to enrollees that the Secretary would provide under Parts A and B. *See* 42 U.S.C. § 1395w-22(a)(1)(A); *id.* § 1395w-22(a)(2)(A). But a Medicare Advantage Organization remains free to be the primary payer under section 1395w-22. And even if the majority were correct that section 1395w-22 required a Medicare Advantage Organization to be a secondary payer, those payments would still be in accordance with section 1395w-22, not sections 1395y(b)(1) and 1395y(b)(2)(A).

I would conclude that the text of the statute is clear and that Humana failed to state a claim. The plain meaning of the statute moots the other issues in this appeal, and I express no view on them. Because a Medicare Advantage Organization is not the Secretary and its treasury is not the Trust Funds, I respectfully dissent.

29