[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11135

_____

MSPA CLAIMS 1, LLC,

Plaintiff-Appellant,

*versus*

TOWER HILL PRIME INSURANCE CO,

Defendant-Appellee,

TOWER HILL CLAIMS SERVICE, LLC,

Defendant.

———————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:18-cv-00157-AW-GRJ

———————————

Before NEWSOM, TJOFLAT, and HULL, Circuit Judges.

NEWSOM, Circuit Judge:

MSPA Claims 1 LLC—the assignee of a now-defunct Medicare Advantage Organization—sued Tower Hill Prime Insurance Company to recover a reimbursable payment. The district court granted Tower Hill's motion for summary judgment because it determined that MSPA Claims 1's suit was untimely. We affirm.

I

A

This case centers on the Medicare Secondary Payer Act, which—and this is hardly an outlier sentiment—is "notoriously complex." *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1240 (11th Cir. 2016) (Pryor, J., dissenting). Given that notorious complexity, we'll set the table with a remedial course on the Act's operation.

Congress created Medicare to provide insurance to those over the age of 65. *See MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 767 (11th Cir. 2020). Oftentimes, though, it

turns out that more than one insurer may be liable for a Medicare beneficiary's medical expenses.  For example, a car-accident victim might be entitled to recover medical expenses both from her own Medicare provider and from the other driver's auto-insurance company.  *See MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1316 (11th Cir. 2019).  Originally, in such instances, Medicare was the "primary" payer—meaning that it paid first—and private insurers were "secondary" payers—meaning that they covered only those expenses that remained after Medicare had paid.  *Id.*

That changed in 1980.  In an effort to cut Medicare costs, Congress "inverted that system" by passing the Medicare Secondary Payer Act.  *Humana*, 832 F.3d at 1234 (quotation omitted).  Now, private insurers serve as the primary payers.  *See id.*  That leaves Medicare—or in some instances, as we'll explain, a "Medicare Advantage Organization"—as the secondary payer, or the payer "of last resort, available only if no private insurer [is] liable." *Id.*

The Medicare Secondary Payer Act also accounts for what happens when the primary payer "has not made or cannot reasonably be expected to" pay for treatment "promptly."  42 U.S.C. § 1395y(b)(2)(B)(i).  In those instances, the secondary payer "may make" the payment, "conditioned on reimbursement." *Id.*  The primary payer "shall reimburse" the secondary payer if it "has or had a responsibility to make payment with respect to such item or service." *Id.* § 1395y(b)(2)(B)(ii).  If the primary payer fails to do so,

the secondary payer can sue for double damages. *See id.* §§ 1395y(b)(2)(B)(iii), 1395y(b)(3)(A).

Separately, Congress passed Medicare Part C—the Medicare Advantage program—in 1997. *See* Pub. L. No. 105-33, 111 Stat. 251, 276 (1997) (codified as amended at 42 U.S.C. § 1395w-21). That legislation, among other things, created Medicare Advantage Organizations—private insurance companies providing Medicare benefits in exchange for fixed fees from the Centers for Medicare and Medicaid Services—and enabled those "MAOs" to act as secondary payers under the Medicare Secondary Payer Act. *See Kingsway*, 950 F.3d at 768. Accordingly, an MAO, like Medicare, may "sue a primary plan that fails to reimburse [its] secondary payment." *Humana*, 832 F.3d at 1238.

But while they possess the same statutory right to seek reimbursement, the Medicare Secondary Payer Act provides distinct causes of action for private and government actors. Thus, "*unlike* Medicare," when an MAO sues, it "must rely" on the Medicare Secondary Payer Act's so-called "private cause of action," which Congress added to the legislation in 1986, and which is found at 42 U.S.C. § 1395y(b)(3)(A). *Tenet*, 918 F.3d at 1317; *see also* Pub. L. No. 99-509, 100 Stat. 1874, 2011 (1986) (codified as amended at 42 U.S.C. § 1395y(b)(3)(A)). It "cannot use the separate government cause of action," found at 42 U.S.C. § 1395y(b)(2)(B)(iii). *Tenet*, 918 F.3d at 1317. And, importantly for our purposes, unlike the government cause of action—which contains a three-year statute of limitations—the private cause of action does not specify a

limitations period.  *Compare* 42 U.S.C. § 1395y(b)(2)(B)(ii), *with id.* § 1395y(b)(3)(A).  As we'll explain, that's where the rubber meets the road in this case:  Because MSPA Claims 1 sued under the private cause of action, it isn't clear what the applicable limitations period is or, consequently, whether its claim was timely filed.

## B

Now, the facts and procedural history of this case.  In 2012, D.L. was attacked by her neighbor's dog.  At the time, D.L. was a Medicare Part C beneficiary enrolled in a Medicare Advantage Program that was administered by Florida Healthcare Plus—a now-defunct MAO.  As a result of D.L.'s injuries, Florida Healthcare paid her medical providers $8,146.09.

D.L.'s neighbor held a liability-insurance policy with Tower Hill.  Tower Hill entered into a settlement agreement with D.L. in 2012, agreeing to pay her $25,000 in exchange for releasing it from liability.  Tower Hill reported the settlement to the Centers for Medicare and Medicaid Services, but it didn't reimburse Florida Healthcare.

MSPA Claims 1 is Florida Healthcare's assignee and, therefore, holds the right to any claim that Florida Healthcare might have against Tower Hill to recover the payments made for D.L.'s medical expenses.  In 2015, MSPA Claims 1 learned of the possibility of a claim against Tower Hill and it issued a Notice of Lien letter demanding payment "[i]f Medical Payment or other applicable insurance coverage exists."  Tower Hill responded, advising MSPA

Claims 1 that the claim "was settled on 6/22/12." That was the first time MSPA Claims 1 had been directly informed of the settlement. MSPA Claims 1 issued a second demand letter in 2018, but Tower Hill never reimbursed it for any payments.

MSPA Claims 1 filed the lawsuit that underlies this appeal on August 17, 2018. In particular, MSPA Claims 1 asserted that Tower Hill caused it (and other similarly situated entities) financial harm when Tower Hill, as a primary payer, failed to pay statutorily required reimbursements. MSPA Claims 1 alleged a claim under the Medicare Secondary Payer Act's private cause of action, *see* 42 U.S.C. § 1395y(b)(3)(A), and for breach of contract. On Tower Hill's motion, the district court dismissed MSPA Claims 1's breach-of-contract count for failure to state a claim.

Following the partial dismissal, the parties submitted dueling summary-judgment motions on MSPA Claims 1's secondary-payer claim. Tower Hill asserted that it was entitled to summary judgment because MSPA Claims 1's lawsuit was filed "over six years after [the Centers for Medicare and Medicaid Services] received notice of this claim" in 2012, and was therefore "barred by the three-year statute of limitations" found in the *government* cause of action, whose limitations period it contended applied to this suit. Although it agreed that the limitations period from the government cause of action applied, MSPA Claims 1 argued that the three-year limitations period begins to run only when "a party is notified of a settlement"—which it insisted occurred, at the

earliest, in 2015.  Accordingly, it contended that it had filed its suit "within the three-year notice-based statute of limitations."

Because, as already explained, the private cause of action under which MSPA Claims 1 sued does not specify a statute of limitations, the district court sought supplemental briefing on which limitations period it should apply.  In response, MSPA Claims 1 argued—forsaking the position it had taken in its summary-judgment motion—that the district court "should borrow the statutes of limitations provided under" the False Claims Act.  Tower Hill maintained its prior position that the three-year limitations period provided in the government cause of action applied.

The district court granted in part and denied in part Tower Hill's summary-judgment motion.  It held that MSPA Claims 1's suit was not time-barred, but it declined to "determine what the proper statute of limitations period is."  Because Tower Hill "based its time-barred argument exclusively on the federal three-year provision in the government action, . . . the only question before [the district court was] whether the three-year federal provision applied."  And it concluded that it did not.

Tower Hill filed a motion for reconsideration, which the district court construed as a renewed motion for summary judgment. Tower Hill argued that if the limitations period from the government cause of action didn't apply, then Florida's general statute of limitations for "[a]ctions other than for recovery of real property" governed and barred MSPA Claims 1's suit.  The district court revisited its earlier summary-judgment ruling and held that Florida's

"four-year limitations period applies." "And because MSPA [Claims 1's cause of action] accrued more than four years before this suit began," it granted Tower Hill's renewed motion on timeliness grounds.

MSPA Claims 1 appealed to this Court. Before us, both MSPA Claims 1 and Tower Hill now agree that the district court erred when it borrowed and applied Florida's general statute of limitations. Moreover, both parties contend that 42 U.S.C. § 1395y(b)(2)(B)(iii)—the government cause of action—provides the applicable limitations period. They diverge narrowly (but significantly) on when that period began to run. MSPA Claims 1 believes that the limitations period did not commence until it received notice of its claim in 2015 and, therefore, that its suit was timely filed in 2018. Tower Hill asserts that the limitations period started in 2012, either (1) when it entered into the settlement agreement with D.L., or (2) when it reported the settlement to the Centers for Medicare and Medicaid Services—and, therefore, that MSPA Claims 1's suit is time-barred.

We sought supplemental briefing on the applicability of 28 U.S.C. § 1658(a)'s catch-all limitations period, which provides that "[e]xcept as otherwise provided by law, a civil action arising under an act of Congress enacted after" December 1, 1990 "may not be commenced later than 4 years after the cause of action accrues." Having considered the parties' briefs and heard oral argument, we hold that § 1658(a) provides the applicable limitations period and that, under that statute, MSPA Claims 1's suit is untimely.

Accordingly, we affirm the district court's order granting summary judgment for Tower Hill.

## II

Our task is two-fold.  First, we must determine what limitations period applies.  Second, applying that limitations period, we must decide whether MSPA Claims 1's complaint was timely filed.

## A

When "there is no federal statute of limitations expressly applicable" to a lawsuit, courts typically "'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). That's the course the district court took, and the course that (for the most part) the parties urge us to take.  But because we can "borrow" a statute of limitations only when there is no applicable federal limitations period, we must first determine whether such a period exists here.  And because, for reasons we'll explain, we conclude that one does, we have no cause to resort to a borrowing analysis.  Instead, we need only apply the statutory period that Congress has provided.

Section 1658 provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after" December 1, 1990 "may not be commenced later than 4 years after the cause of action accrues."  28 U.S.C. § 1658(a); *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 375 (2004).  The question for us, then, is whether MSPA Claims 1's "civil action" in this case

10                    Opinion of the Court                    21-11135

"aris[es] under an Act of Congress enacted after" December 1, 1990. We hold that it does.

For purposes of § 1658(a), "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant *was made possible* by a post-1990 enactment." *Jones*, 541 U.S. at 382 (emphasis added) (quoting 28 U.S.C. § 1658(a)). The Medicare Secondary Payer Act's private cause of action in 42 U.S.C. § 1395y(b)(3)(A)—under which MSPA Claims 1 sued here—was enacted in 1986, well before § 1658 was enacted on December 1, 1990. So if that were the only "Act of Congress" in play, § 1658(a) wouldn't apply. *See id.* But Medicare Part C—which created MAOs and granted them a statutory right to seek reimbursable fees, thereby empowering them to sue under the private cause of action—wasn't enacted until 1997. *Humana*, 832 F.3d at 1235. Accordingly, because MSPA Claims 1's cause of action "was made possible by" Medicare Part C—"a post-1990 enactment"—§ 1658(a) provides the applicable limitations period. *Jones*, 541 U.S. at 382.

MSPA Claims 1 and Tower Hill disagree.[1] They contend that "[i]t makes no difference that the Balanced Budget Act of 1997

[1] In the unique circumstances of this case, we think that we are well within our discretion to reject the parties' mistaken view of § 1658(a)'s applicability. Although Tower Hill's top-line argument was that § 1658(a) doesn't apply, it contended, in the alternative, that we should nonetheless affirm if we concluded that it does. *See* Supp. Br. of Appellee at 10 ("[I]f the Court finds that

created Medicare Part C," and with it, MAOs.  Supp. Br. of Appellant at 3; *accord* Supp. Br. of Appellee at 6.  They say that MSPA Claims 1's cause of action wasn't "made possible" by the 1997 amendment within the meaning of *Jones* because it merely allowed "existing entities [to] apply a new label to themselves in 1997 by offering a different type of plan."  Supp. Br. of Appellee at 6.  Thus, in their view, the 1997 amendment didn't create any "new rights and liabilities," which is what they say *Jones* requires.  Supp. Br. of Appellant at 3.

That position, we think, is foreclosed by binding precedent. We've held, several times over, that the 1997 amendment "created" MAOs.  *Kingsway*, 950 F.3d at 768; *accord Humana*, 832 F.3d at 1235.  In the same vein, we've said that Medicare Part C, adopted as part of the 1997 amendment, granted MAOs "a statutory right to charge a primary plan under the Medicare Advantage program." *Kingsway*, 950 F.3d at 771 (quotation omitted); *see also* 42 U.S.C. § 1395w-22(a)(4).  And of course, it's only "[b]ecause" of that

---

Section 1658 applies, it should affirm.").  And, of course, once a party properly tees up an "issue or claim"—as Tower Hill did here by contending that MSPA Claims 1's suit was time-barred—we are "not limited to the particular legal theories advanced" by that party, but rather "retain[] the independent power to identify and apply the proper construction of governing law."  *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991).  A fortiori, we are not limited to a party's *primary* theory when it also embraces an alternative ground for affirmance, as Tower Hill has done here.  Thus, because Tower Hill asked us to affirm under § 1658(a) if applicable, it is within our discretion to do so—and, indeed, no party contends otherwise.

statutory right that an "MAO suffers an injury when a primary plan fails to reimburse it." *Kingsway*, 950 F.3d at 771.

To be clear, then, based on how we've previously described the statutory framework, without Medicare Part C, an MAO like Florida Healthcare would not (1) exist, (2) have a statutory right to charge a primary payer, or (3) suffer any cognizable injury if the primary payer didn't reimburse it. *See id.* Given that binding caselaw, it seems clear to us that Florida Healthcare's—and, in turn, its assignee MSPA Claims 1's—cause of action was "made possible by" Part C—"a post-1990 enactment." *Jones*, 541 U.S. at 382. Accordingly, we hold that § 1658(a) provides the applicable statute of limitations—and, therefore, that we need not (and may not) engage in a borrowing analysis.

## B

Having determined that § 1658(a) supplies the applicable limitations period, we turn to the second question: Is MSPA Claims 1's suit timely? Section 1658(a), again, requires that a claim be brought no "later than 4 years after the cause of action *accrues*." 28 U.S.C. § 1658(a) (emphasis added). The pertinent question, then, is when MSPA Claims 1's cause of action "accrue[d]" for § 1658(a) purposes. The answer will take some unpacking.

When determining the start date for a statute of limitations, courts typically choose between one of two rules. The first—which we'll call the "occurrence rule"—begins the limitations period on the date that the violation of the plaintiff's legal right

21-11135                Opinion of the Court                13

occurred.  *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 962 (2017).  The second—the "discovery rule"—commences the limitations period on the date the plaintiff discovered or should have discovered the cause of action.  *See id.*  Under the occurrence rule, the limitations period for MSPA Claims 1's cause of action began running in 2012, rendering MSPA Claims 1's suit—filed six years later—untimely.  Under the discovery rule, however, the period at least arguably wouldn't have started running until 2015, when MSPA Claims 1 says it first learned about Tower Hill's settlement with D.L.—*i.e.*, within § 1658's four-year limitations period.  Accordingly, the question of which rule § 1658 employs is dispositive here.

"When interpreting limitations provisions, as always, we begin by analyzing the statutory language."  *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (quotation omitted).  If the statute is "unambiguous, the first step of the interpretive inquiry is our last."  *Id.*  And importantly here, "[i]f 'there are two plausible constructions of a statute of limitations,' we generally 'adopt the construction'" that aligns with "'the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action.'"  *Id.* (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States*, 545 U.S. 409, 418–19 (2005)).  Put more directly, "in the absence of a clear Congressional directive or a self-concealing violation, the court should not graft a discovery rule onto a statute of limitations."  *Foudy v. Miami-Dade County*, 823 F.3d 590, 593–94 (11th Cir. 2016).

Whether the term "accrues" in § 1658(a) is ambiguous is, well, not entirely clear.  On the one hand, the Supreme Court has indicated that it isn't—"a right accrues," the Court has said flatly, "when it comes into existence." *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013); *see also Everly v. Everly*, 958 F.3d 442, 461 (6th Cir. 2020) (Murphy, J., concurring) (explaining that the Copyright Act's "text is unambiguous" in adopting the occurrence rule because "the statute's 'accrued' language had a well-known 'legal meaning'" when Congress passed the law).  On the other hand, this Court seems to have agreed with the Eighth Circuit that the term "accrues," as used in § 1658(a), *is* ambiguous.  *See Foudy*, 823 F.3d at 594 (referring to § 1658(a) as providing "ambiguous language in a catch-all statute of limitations"); *see also McDonough v. Anoka County*, 799 F.3d 931, 942 (8th Cir. 2015) ("The meaning of the word 'accrue' is thus not free of ambiguity.").  Because—right or wrong—we are bound by *Foudy*'s holding in that respect, that resolves the first-order question: the term "accrues" in § 1658(a) is ambiguous.  *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("Under [the prior-panel-precedent] rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.").[2]

---

[2] Although *Foudy*'s "ambiguity" holding is in some tension with Supreme Court precedent, it hasn't been undermined to the point of abrogation. *Gabelli*, for instance, didn't address § 1658 specifically and, therefore, is not "clearly on point." *Archer*, 531 F.3d at 1352.

One more word about *Foudy*. To be sure, the Court there went on to say—in what, for reasons we'll explain, we think was clearly dictum—that because Congress "left [§ 1658(a)'s] ambiguous language in a catch-all statute of limitations, 'Congress *may* have intended the trigger date for the date of accrual to vary depending on the specific cause of action at hand.'" *Foudy*, 823 F.3d at 594 (emphasis added) (quoting *McDonough*, 799 F.3d at 943). It then looked through § 1658(a) to the Driver's Privacy Protection Act, which was at issue there, determined that under the DPPA a "claim 'accrues' under § 1658(a) when the alleged violation occurs," and affirmed the district court's dismissal on timeliness grounds. *Id.* at 594.

*Foudy*'s methodology—looking through § 1658(a) to the "specific cause of action at hand"—flatly contradicts the Supreme Court's instructions about resolving an ambiguous limitations period. So long as § 1658(a) is "plausibl[y] constru[ed]" to embrace an occurrence rule, that's how we must construe it, given "the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Rotkiske*, 140 S. Ct. at 360.

Although we have concluded that we are bound by *Foudy*'s holding that § 1658(a) is ambiguous, we aren't wedded to its dictum about the means of resolving that ambiguity. We are bound, of course, only by "a prior panel's *holding*." *Archer*, 531 F.3d at 1352 (emphasis added). And a holding is a court's "determination of a matter of law pivotal to its decision." Bryan A. Garner, *et al.*, *The Law of Judicial Precedent* 44 (2016) (quoting *Holding*, Black's Law Dictionary (10th ed. 2014)). *Foudy* actually *held* only (1) that the term "accrues" in § 1658(a) is ambiguous and (2) that "the statute of limitations for a DPPA claim 'accrues' under § 1658(a) when the alleged violation occurs." *Foudy*, 823 F.3d 594. Because the court's tentative statement—that "Congress *may* have" intended for us to look through to the underlying cause of action, *id.* (emphasis added)—wasn't "pivotal to its decision," it wasn't a holding and we aren't obliged to follow it, Garner, *supra*, at 44. That's particularly so given its inconsistency with the Supreme Court's prescription in *Rotkiske*.

Accordingly, we must ask whether § 1658(a) is "plausibl[y] constru[ed]" to reflect "the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Rotkiske*, 140 S. Ct. at 360 (quotation omitted). For several reasons, it is at the very least "plausible" that the term "accrues" in § 1658(a) adopts the occurrence rule. *Id.* (quotation omitted). First, under "common parlance a right accrues when it comes into existence." *Gabelli*, 568 U.S. at 448. Indeed, that definition of "accrue" appears "in dictionaries from the 19th century up until today." *Id.*; *see also, e.g.*, *Accrue*, Black's Law Dictionary (11th ed. 2019) (defining "accrue" as "[t]o come into existence as an enforceable claim or right; to arise"); *Accrue*, Webster's Third New International Dictionary 13 (2002) (defining "accrue" as "to come into existence as an enforceable claim: vest as a right").

Second, that's how the Supreme Court seems to understand the term "accrues." In *Graham County*, for instance, the Court held that it was proper to borrow a state limitations period to govern a retaliatory action under the False Claims Act. 545 U.S. at 422. In reaching that conclusion, the Court held that the "analogous state statutes of limitations virtually all start to run when the cause of action accrues." *Id.* at 419. And it defined the phrase "when the cause of action accrues" to mean "when the retaliatory action *occurs*." *Id.* (emphasis added); *accord Rotkiske*, 140 S. Ct. at 360 (implying that "accrues" is synonymous with "when a plaintiff has a complete and present cause of action").

Third, and finally, § 1658's structure indicates that its subsection (a) embodies an occurrence rule. Section 1658(a)'s statutory neighbor, § 1658(b)(1), includes an express discovery rule for certain claims. "The most natural reading" of § 1658(a), then, "is that Congress implicitly excluded a general discovery rule by explicitly including one" in § 1658(b)(1). *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001).[3]

⋆   ⋆   ⋆

Because it is at least "plausible" that the term "accrues" in § 1658(a) incorporates an occurrence rule—in fact, and setting presumptions aside, we think that's the best interpretation—that is

---

[3] To be sure, the Eighth Circuit distinguished *TRW* because, it said, "[u]nlike the provision in *TRW* . . . , the special standard in § 1658" that introduces the discovery rule "includes an express occurrence rule as well." *McDonough*, 799 F.3d at 943. It concluded, therefore, that Congress demonstrated that it knew how to include an express discovery and occurrence rule in § 1658(b), "and yet chose to preserve the general rule with the more ambiguous language of § 1658(a)." *Id.*

It's true that § 1658(b) expressly incorporates both a discovery rule ("2 years after the discovery") and an occurrence rule ("5 years after such violation"). But, even if § 1658(a) is more "general" or ambiguous, "we should adopt the construction" that reflects the "default rule" that "Congress legislates against the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Graham County*, 545 U.S. at 418. The Eighth Circuit failed to do business with that principle, opting instead to fashion a rule under which a court can peek through to the underlying cause of action. *McDonough*, 799 F.3d at 943. We decline to adopt that approach here in the face of Supreme Court precedent directly to the contrary.

how we interpret it.  Therefore, MSPA Claims 1's cause of action accrued in 2012 when MSPA Claims 1's assignor, Florida Healthcare, paid D.L.'s medical bills and became entitled to reimbursement through the Medicare Secondary Payer Act.  Because that was more than four years before MSPA Claims 1 filed suit in 2018, its suit is not timely under 28 U.S.C. § 1658(a).

**AFFIRMED.**