*Aetna Life Insurance Company v. Big Y Foods, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
August Term, 2021
(Argued: February 09, 2022     Decided: October 26, 2022)
Docket No. 20-3853

—————————————————

AETNA LIFE INSURANCE COMPANY,
*Plaintiff-Appellee,*

v.

BIG Y FOODS, INC.,
*Defendant-Appellant,*

and

NELLINA GUERRERA, CARTER MARIO LAW FIRM, SEAN HAMMIL, DANIELLE
WISNIOWSKI.
*Defendants.*

—————————————————

Before:     POOLER, SACK, AND NARDINI, *Circuit Judges*.

Plaintiff-Appellee Aetna Life Insurance Company brought suit against Big Y Foods, Inc., for reimbursement of Aetna's payments for Nellina Guerrera's medical services after she was injured at a Big Y Foods, Inc. supermarket store.  Aetna moved for partial summary judgment, arguing that the Medicare Secondary Payer Act gave Medicare Advantage organizations such as Aetna a private cause of action to seek reimbursement of conditional payments for medical services from tortfeasors such as Big Y and that no genuine issue of material fact remained.  The United States District Court for the District of Connecticut (Dooley, *J.*) granted Aetna's motion, and Defendant-Appellant Big Y now appeals.  We conclude that the Medicare Secondary Payer Act grants a private cause of action to Medicare Advantage organizations such as Aetna and that no genuine issue of material fact remains.  We therefore

AFFIRM the judgment of the district court.

Judge NARDINI concurs in a separate opinion.

ERIC P. SMITH, Faxon Law Group, LLC, New Haven, CT., *for Defendant-Appellant*;

MICHAEL P. ABATE, Kaplan Johnson Abate & Bird LLP, Louisville, KY (BRIAN A. BENDER, ESQ., Harris Beach PLLC, New York, NY, *on the brief*), *for Plaintiff-Appellee*;

David Farber, King & Spalding LLP, Washington, D.C., *for amici curiae American Property Casualty Insurance Association, The Marc Coalition, the National Association of Mutual Insurance Companies, the New York Insurance Association, and DRI, Inc., in support of Big Y. Foods, Inc.*;

Ryan L. Woody, Matthiesen, Wickert & Lehrer, S.C., Hartford, WI, *for amicus curiae America's Health Insurance Plans in support of Aetna Life Insurance Company*;

Arlenys Perdomo, MSP Recovery Law Firm, Coral Gables, FL, *for amicus curiae MSP Recovery, LLC in support of Aetna Life Insurance Company*.

SACK, *Circuit Judge*:

Nellina Guerrera was injured at a Big Y Foods, Inc. supermarket store. Her medical care was partly paid for by her Medical Advantage organization ("MAO"), Aetna Life Insurance Company. Aetna sought reimbursement from Big Y for the medical costs it paid to Guerrera. Big Y

refused to pay, and Aetna brought suit against Big Y in the United States District Court for the District of Connecticut for reimbursement and double damages pursuant to the private cause of action provided for in the Medicare Secondary Payer Act ("MSP Act").

The district court granted Aetna's motion for partial summary judgment, concluding that Big Y owed Aetna reimbursement for the medical costs that Aetna paid to health care providers on Guerrera's behalf and that Aetna could use the MSP Act's private cause of action to recover those costs. Big Y appealed. The question before us is whether the MSP Act's private cause of action permits an MAO such as Aetna to recover from a tortfeasor such as Big Y. The Eleventh and Third Circuits have answered that question in the affirmative. *See Humana Med. Plan Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238-40 (11th Cir. 2016); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 359, 367 (3d Cir. 2012). We agree with our sister circuits. After examining Big Y's remaining arguments, we conclude that no genuine issue of material fact remains, and therefore affirm the order of the district court.

## BACKGROUND

*Statutory and Regulatory Background*

Congress passed the Medicare Act in 1965 as a "federally funded health insurance program for the elderly and disabled." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506 (1994). Medicare is commonly referred to by its five parts. Part A and Part B contain the traditional fee-for-service provisions that entitle eligible persons to have the government, through Medicare, directly pay medical providers for hospital and outpatient medical care. Part C is the Medicare Advantage program, which allows Medicare-eligible persons to elect to have an MAO provide their Medicare benefits. Part D, not at issue here, provides for prescription drug coverage.

Part E contains definitions and exclusions for the rest of Medicare. One such exclusion is the MSP Act, described below in greater detail. Part E also contains two causes of action. One is expressly reserved for the United States, and the other, 42 U.S.C. § 1395y(b)(3)(A), is the private cause of action at issue in this case.

4

*1. Medicare As a Secondary Payer*

Medicare initially acted as the primary payer for many medical services, even if a Medicare beneficiary was also covered under another insurance plan. "Medicare paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained." *Bio–Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011). In 1980, Congress attempted to control the rising costs of Medicare by enacting the MSP Act, which "inverted that system [and] made private insurers covering the same treatment the 'primary' payers and Medicare the 'secondary' payer." *Id.* The MSP Act transformed Medicare into a "a back-up insurance plan to cover that which is not paid for by a primary insurance plan." *Thompson v. Goetzmann*, 337 F.3d 489, 496 (5th Cir. 2003) (per curiam).

The MSP Act, 42 U.S.C. § 1395y(b), is located in Part E of the Medicare Act. Paragraph (1) establishes certain requirements for primary group health plans. Paragraph (2) describes Medicare's status as a secondary payer to primary plans and contains a set of provisions that effectuates that status. First, Paragraph (2)(A) states that Medicare will not bear the cost of services when:

(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

(ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

*Id.* § 1395y(b)(2)(A). These provisions protect Medicare from being required to pay for services for which a primary plan is responsible. "Primary plan" is defined broadly, covering everything from traditional group health plans, as defined by Paragraph (1), to businesses without insurance, which are deemed to have a "self-insured" plan. *Id.*

Second, to resolve situations in which the primary payer may be unwilling or unable to pay promptly, Paragraph (2)(B) provides authority for conditional payments to be made by Medicare, subject to reimbursement:

**(i) Authority to make conditional payment**
The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

6

**(ii) Repayment required**

Subject to paragraph (9), a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means . . . .

*Id.* § 1395y(b)(2)(B).

Third, to increase the chance of receiving reimbursement, Congress established mechanisms for enforcement. One such mechanism is provided in Paragraph (2)(B), which grants a cause of action for the United States government to recover from a primary plan. *Id.* § 1395y(b)(2)(B)(iii). Paragraph (3), entitled "Enforcement," contains another such mechanism, the private cause of action at issue in this case. It provides simply:

There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

*Id.* § 1395y(b)(3)(A).

7

## 2. *The Medicare Advantage Program*

In 1997, Congress added Part C to the Medicare system. Part C gives Medicare-eligible persons "the option to receive their Medicare benefits through private organizations" — namely "Medicare Advantage organizations." *Collins v. Wellcare Healthcare Plans. Inc.*, 73 F. Supp. 3d 653, 659 (E.D. La. 2014). This program was enacted to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare," and to "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.).

MAOs are required to enter into a contract with the Department of Health and Human Services. 42 U.S.C. § 1395w-27. MAOs receive a fixed amount per enrollee, and in return, must provide at least the same level of benefits that enrollees would receive under the fee-for-service option. *Id.* § 1395w-22. Medicare beneficiaries have increasingly elected to receive their Medicare benefits through MAOs. In July 2006, 6.5 million Medicare beneficiaries chose to receive their benefits through MAOs, but by September 2022, that number had risen to over 29 million. *See* U.S. CENTERS FOR MEDICARE

8

& MEDICAID SERVICES, MONTHLY CONTRACT AND ENROLLMENT SUMMARY

REPORTS, available at: https://www.cms.gov/Research-Statistics-Data-and-

Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/Monthly-

Contract-and-Enrollment-Summary-Report.

*Factual Background*

In February 2015, Nellina Guerrera fell and sustained injuries at a

Big Y store in Monroe, Connecticut. She received medical care for her injuries.

Guerrera was eligible for Medicare and elected to receive her Medicare coverage

through a Medicare Advantage plan run by Aetna. Healthcare providers issued

invoices totaling more than $48,000 for care relating to Guerrera's fall. Aetna

paid $9,854.16, and Guerrera paid $1,000.

Guerrera hired Carter Mario Injury Lawyers to pursue Big Y for

approximately $50,000 in damages, alleging that Big Y was responsible for her

injuries. In September 2015, Aetna sent Big Y a letter stating that under the MSP

Act, Aetna was owed reimbursement for the $9,854.16 that Aetna had paid.

Aetna also warned Big Y that failure to pay could result in double damages. Big

Y refused to pay Aetna. Big Y argues to this Court that "[a]lthough Big Y knew

that Aetna was demanding reimbursement in the amount of $9,854.16 both

before and after Big Y dispatched its settlement check, it did not believe, in good faith, that the law imposed any duty or legal obligation on the part of Big Y to satisfy Aetna's demands for payment under the circumstances." Appellant's Br. at 4.

Big Y argues that Guerrera's own negligence was the proximate cause of her injuries. Nevertheless, in what Big Y describes as a nuisance settlement, it issued a settlement offer of $30,000 in exchange for Guerrera's general release of liability. Guerrera accepted. On September 15, 2016, Guerrera signed a settlement agreement that included a disclaimer from Big Y denying all responsibility for the accident and a general release of Big Y from liability. The agreement states that "[Guerrera] understands that this withdrawal of action is the result of a doubtful and disputed claim and that liability is expressly denied [by Big Y]." JA 81-82. It states further that the parties "acknowledge . . . this agreement does not constitute any admission of fault by any party and cannot be used in any other proceeding as evidence of the same." *Id.* at 82.

After Big Y and Guerrera settled, Aetna continued to demand reimbursement for the $9,854.16, and Big Y continued to refuse to pay.

*Procedural History*

In April 2017, Aetna filed this suit in the District of Connecticut against Big Y, Guerrera, and her lawyers, claiming that it was owed reimbursement for its payments of Guerrera's medical expenses. The case was first assigned to Judge Hall. Judge Hall granted Guerrera and her law firm's motions to dismiss, but denied Big Y's motion to dismiss.

Judge Hall noted that "[t]he Second Circuit has never directly addressed whether MAOs may bring suit pursuant to the Private Cause of Action provision." *Aetna Life Ins. Co. v. Guerrera*, 300 F. Supp. 3d 367, 376 (D. Conn. 2018). After examining the available persuasive authority, Judge Hall stated that "[t]he only two circuits who have addressed this question, the Third and Eleventh Circuits, have both reached the conclusion that MAOs may sue under the Private Cause of Action provision." *Id.* Since the Third Circuit decision had been published, Judge Hall continued, "a significant number of district courts have followed the reasoning of the Third Circuit to find that MAOs may avail themselves of the Private Cause of Action provision." *Id.*[*]

---

[*] This trend has continued. *See, e.g.*, *MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, No. 2:21-cv-1901, 2022 WL 900562, at *6 (S.D. Ohio Mar. 28, 2022); *Humana Ins. Co. v. Bi-Lo, LLC*, No. 4:18-cv-2151, 2019 WL 4643582, at *3 (D.S.C. Sept. 24, 2019); *MSP Recovery Claims, Series LLC. v. Progressive Corp.*, No. 1:18-cv-2273, 2019 WL 5448356, at *8 (N.D. Ohio Sept. 17, 2019); *MSP*

11

Judge Hall concluded that "[t]his court, too, finds the reasoning of the Third and Eleventh Circuits persuasive, and concludes that Aetna, as a MAO, may sue under the Private Cause of Action provision." *Id.*

Judge Hall also rejected Big Y's argument that it was not liable because it was not a primary plan under the definition of the MSP Act. Judge Hall ruled against Big Y, observing that the MSP Act defines the term "primary plan" to include a "liability insurance policy or plan (including a self-insured plan)," *id.* at 372, which "further provides that '[a]n entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.'" *Id.* at 383 (quoting 42 U.S.C. § 1395y(b)(2)(A)(ii)). While Big Y argued that it had fulfilled all its obligations, if any there were, by paying Guerrera a settlement, Judge Hall held that "primary plans may not satisfy their obligations under the MSP simply by paying a settlement to a beneficiary, where they are on notice that a secondary payer has already paid the beneficiary's medical expenses." *Id.* at 386.

---

*Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp., Inc.*, 404 F. Supp. 3d 470, 481 (D. Mass. 2019), *reconsideration denied*, No. 1:18-cv-11702, 2019 WL 6791962 (D. Mass. Dec. 12, 2019); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.*, No. 3:14-cv-476, 2015 WL 5449221, at *7 (E.D. Tenn. Sept. 1, 2015).

After Judge Hall denied Big Y's motion to dismiss, but before summary judgment proceedings were complete, the case was reassigned to Judge Dooley. Judge Dooley granted Aetna's motion for summary judgment and awarded Aetna double damages pursuant to the MSP Act. *Aetna Life Ins. Co. v. Guerrera*, No. 3:17-cv-621, 2020 WL 4505570, at *1, *8 (D. Conn. Aug. 5, 2020). Judge Dooley invoked the law of the case doctrine and stated that the court would not re-examine the issue of whether MAOs may invoke the MSP Act's private cause of action, "especially in light of the thorough and well-reasoned analysis contained in Judge Hall's decision." *Id.* at *3. With the issues in question "substantially narrowed" by reliance on Judge Hall's earlier decision, *id.*, Judge Dooley needed to determine only "whether Big Y was a primary plan under the MSP Act." *Id.* at *6. After examining the text of the MSP Act and relevant judicial precedent, Judge Dooley concluded that "[c]ourts have consistently held that a tortfeasor, insured or self-insured, can be a 'primary plan' for purposes of the MSP Act." *Id.* (citing 42 U.S.C. § 1395y(b)(2)(A)).

Big Y, in disputing liability, argued that the settlement agreement did not explicitly cover Guerrera's medical expenses. Clause (b)(2)(B)(ii) of the MSP Act states that a primary plan may be responsible for repayment when a

13

settlement involves "payment for items or services included in [the] claim against the primary plan" – here, Guerrera's medical expenses. 42 U.S.C. § 1395y(b)(2)(B)(ii). Judge Dooley agreed with Big Y that "whether a settlement (or other post-litigation) payment was for medical expenses paid by an MAO may, under different circumstances, be a fact over which a genuine dispute exists." *Aetna*, 2020 WL 4505570, at *7. However, Judge Dooley concluded, "where, as here, there is no dispute that the underlying litigation that was settled did, in fact, include a claim for the payment of medical expenses, and such claim was settled with the payment of monies in exchange for a release, the plaintiff has demonstrated that the alleged tortfeasor, here Big Y, is a primary plan under the MSP Act." *Id.* at *7.

Judge Dooley concluded that Aetna was entitled to a double damages award based on the statutory text of the private cause of action provision, which provides for "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)[.]" *Id.* at *8 (quoting 42 U.S.C. § 1395y(b)(3)(A)). On October 19,

14

2020, judgment was entered in favor of Aetna in the amount of $19,708.32,

double Aetna's payments to Guerrera's medical care providers.

Big Y timely appealed.

## DISCUSSION

### I. Standard of Review

"We review the district court's grant of summary judgment *de novo*, and we will affirm only if the evidence, when viewed in the light most favorable to the party against whom it was entered, demonstrates that there is no genuine issue as to any material fact and that judgment was warranted as a matter of law." *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 138 (2d Cir. 2017) (citations omitted). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. The Private Cause of Action

To determine whether MAOs may bring suit pursuant to the MSP Act's private cause of action, "[a]s always, we begin with the text." *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022); *see also Ray v. Ray*, 22 F.4th 69, 73 (2d Cir.

15

2021) ("When answering questions of statutory interpretation, we begin with the language of the statute. If the statutory language is unambiguous, we construe the statute according to the plain meaning of its words.") (citations omitted).

The text of the MSP Act states: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A).

On its face, this provision is broad and open-ended. It provides no limitation on which private actors may sue a primary plan that fails to provide reimbursement. As the Eleventh Circuit concluded, there is "no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations." *Humana*, 832 F.3d at 1238. And, as the Third Circuit similarly observed, "the [private cause of action] provision is broad and unambiguous, placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan

16

fails to appropriately reimburse any secondary payer." *In re Avandia*, 685 F.3d at 359.

The private cause of action provides for damages when a primary plan fails to pay "in accordance with paragraphs (1) and (2)(A)." Paragraph (2)(A) bars "payment under this subchapter" when there is a primary plan in place that is responsible for payment. *Id.* § 1395y(b)(2)(A). As a matter of statutory interpretation, "this subchapter" refers to the subchapter in which Paragraph (2)(A) is found – namely Subchapter XVIII of Chapter 7 of Title 42 of the U.S. Code, i.e., the subchapter comprising the entirety of the Medicare Act. The Third Circuit agrees, observing that "[t]his language makes clear that 'subchapter' refers to the Medicare Act as a whole." *In re Avandia*, 685 F.3d at 360. It follows that Paragraph (2)(A), through its reference to Subchapter XVIII, applies to the entirety of the Medicare Act, including the Medicare Advantage provisions located in Part C, and does not operate to exclude MAOs from utilizing the private cause of action.

Big Y argues that because Paragraph (2)(B) refers to the "Secretary" and the "Trust Fund," it allows for recovery only by the government and not by MAOs. However, the private cause of action refers only to Paragraphs (1) and

17

(2)(A), not (2)(B). *Humana*, 832 F.3d at 1237-38. Any limitation to the private cause of action must thus come from Paragraphs (1) and (2)(A), the paragraphs referenced by the private cause of action provision, and not (2)(B).

Big Y also argues that MAOs have a remedy in Part C under the "right-to-charge" provision and therefore do not need access to the private cause of action. The "right-to-charge" provision states that MAOs "may (in the case of the provision of items and services to an individual under a [Medicare Advantage] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge" a primary payer. 42 U.S.C. § 1395w-22(a)(4). But nothing in the text indicates that this is the *exclusive* remedy. *See also Humana*, 832 F.3d at 1237 ("A plain reading of paragraph (2)(A) and the MAO right-to-charge provision . . . reveals that MAO payments are made secondary to primary payments pursuant to the MSP, not the MAO right-to-charge provision.").

Big Y next argues that it must prevail because granting MAOs a private cause of action "serves no identifiable purpose beyond enhancing the profits of MAOs." Appellant's Br. at 12. Big Y cites as support for its argument the reasoning of Judge Tjoflat, the sole dissenter from the denial of the petition to

rehear *Humana en banc*. It was his view that, "[b]ecause the Government pays a per capita rate to MAOs, the Medicare Trust Funds are not impacted by a primary payer's failure to reimburse an MAO." *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 880 F.3d 1284, 1293 (11th Cir. 2018) (Tjoflat, J., dissenting from denial of rehearing *en banc*).

Big Y's argument fails. First, the stated congressional purpose in creating MAOs was to spur innovation by sparking competition with traditional Medicare plans. As the Third Circuit noted in *Avandia*, "[i]t would be impossible for MAOs to stimulate innovation through competition if they began at a competitive disadvantage, and, as CMS has noted, MAOs compete best when they recover consistently from primary payers." *In re Avandia*, 685 F.3d at 363 (citation omitted). Congress intended to create a level playing field between MAOs and traditional Medicare plans, and blocking MAOs from utilizing the best route of recovery from primary payers would be at odds with such an intent.

In addition, Big Y's assertion that reimbursements to MAOs simply line the pockets of private entities is mistaken. MAOs are legally required to provide at least the same level of benefits that enrollees would receive under the

19

fee-for-service option. 42 U.S.C. § 1395w-22. When MAOs have costs per enrollee that are below CMS's benchmark, future benchmarks may be adjusted, resulting in lower costs. *See* 42 C.F.R. §§ 422.306, 422.308.

In a competitive marketplace, recoveries by MAOs will also benefit beneficiaries because lower costs will allow MAOs to entice more beneficiaries to their plans by offering more benefits than the bare minimum requirements. When MAOs "recover[] from primary payers, [and] MAOs save money, that savings results in additional benefits to enrollees not covered by traditional Medicare. Thus, ensuring that MAOs can recover from primary payers efficiently with a private cause of action for double damages does indeed advance the goals of the [Medicare Advantage] program." *In re Avandia*, 685 F.3d at 365.

Aetna's reading of Congress's intent is bolstered by the 2020 passage of the PAID Act, which reflected Congressional awareness that MAOs increasingly use the private cause of action to seek reimbursement from settling parties. Instead of blocking such suits, Congress streamlined the reimbursement process and lowered operational costs by increasing information sharing.

Senator Scott of South Carolina discussed this system on the floor of the Senate when supporting the PAID Act:

> [T]he existing MSP statute and regulations impose specific requirements on CMS, and on Part C and Part D plans, to pay for claims in some situations, to not pay for claims in other situations, and to pursue recovery of claims when appropriate. Nothing in this legislation is intended to change any of those obligations or requirements, and Congress expects Part C and Part D plans to continue to seek recovery of claims by timely notifying settling parties when a payment has been made that should be reimbursed, consistent with the CMS notice procedures. This legislation is only intended to provide more information to the settling parties so that they have the ability to coordinate with Part C and Part D plans earlier, if they so choose.

166 CONG. REC. S7324 (daily ed. Dec. 9, 2020) (statement of Sen. Scott).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) (citations omitted). While congressional inaction is not a certain indicium of agreement with judicial precedent, this principle of statutory interpretation is at its apex when Congress passes legislation on the issue yet leaves judicial and administrative interpretation of the statute unsettled.

21

"Our inquiry ceases in a statutory construction case if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (citations, brackets, and internal quotation marks omitted). Our inquiry here is satisfied by the plain text of the MSP Act and the statutory scheme; we need proceed no further.

### III. Summary Judgment

Big Y also argues that even if Aetna has a private cause of action under the MSP Act, there are genuine issues of material fact remaining as to whether Big Y has the responsibility to reimburse Aetna for the medical expenses Aetna incurred. Big Y reasons that because the settlement agreement did not explicitly include medical costs, there are still genuine issues of material fact as to whether it is liable. We think otherwise, and therefore affirm the district court's grant of partial summary judgment.

The MSP Act defines a "primary plan" as "a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance[.]" 42 U.S.C. § 1395y(b)(2)(A). Clause 1395y(b)(2)(B)(ii) further provides that "[a] primary plan's responsibility [to reimburse] may be demonstrated by a judgment, a

22

payment conditioned upon the recipient's compromise, waiver, or release (*whether or not there is a determination or admission of liability*) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id.* § 1395y(b)(2)(B)(ii) (emphasis added).

The district court found that the text of the statute clearly encompassed a self-insured tortfeasor such as Big Y. Judge Dooley explained that "[c]ourts have consistently held that a tortfeasor, insured or self-insured, can be a 'primary plan' for purposes of the MSP Act," and noted that "Congress amended the MSP in 2003 to include tortfeasors and their insurance carriers in the definition of a primary plan." *Aetna*, 2020 WL 4505570, at *6 (citing and quoting *Collins*, 73 F. Supp. 3d at 666).

Big Y argues that it made a settlement offer to Guerrera only to rid itself of a nuisance lawsuit, and notes that the settlement agreement included a general release from Guerrera and a denial of responsibility by Big Y. Big Y asserts in its brief that the payment of medical expenses was not even discussed during settlement negotiations between Big Y and Guerrera's lawyers. Therefore, Big Y asserts, it did not have any responsibility to make payment to Aetna for Guerrera's fall-related medical expenses. Big Y further argues that,

23

since medical costs were never discussed explicitly in the settlement, the payment was not for medical services and thus cannot qualify for Medicare reimbursement because the statutory language requires that payment be made "for items or services included in [the] claim against the primary plan[.]" 42 U.S.C. § 1395y(b)(2)(B)(ii).

Big Y's argument is directly contradicted by the statute, which, as discussed above, states that responsibility may be demonstrated by a payment conditioned upon the recipient's release "whether or not there is a determination or admission of liability[.]" *Id.* As the district court concluded, it is enough that "Guerrera's claim against Big Y included a claim for her medical expenses and the settlement resolved all of her claims, which, of necessity, included the claim for medical expenses." *Aetna*, 2020 WL 4505570, at *7. This approach is supported by persuasive authority from other courts, such as the Third Circuit. *See Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*, 760 F.3d 307, 315 (3d Cir. 2014) ("Like the other courts of appeals that have considered the issue, we hold that the fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate the beneficiary's obligation to reimburse Medicare.") (citations omitted); *see also Anderson v. Burwell*, 167 F.

24

Supp. 3d 887, 897 (E.D. Mich. 2016) ("If a Medicare beneficiary seeks medical expenses as damages in a lawsuit, and the parties settle the claim, the settlement demonstrates the tortfeasor's responsibility for those medical expenses, regardless of whether the tortfeasor admits liability.").

Big Y does not dispute that Guerrera filed a claim against Big Y seeking compensation for the personal injuries that she sustained; that Big Y settled that claim with Guerrera, paying Guerrera $30,000; and that Big Y knew that Aetna was asserting a lien against Big Y for Aetna's payment of Guerrera's medical expenses. There is no dispute of material fact remaining, and Big Y is responsible for payment as a matter of law.

## CONCLUSION

We have considered the parties' remaining arguments on appeal and conclude that they are without merit. For the reasons explained above, we affirm the judgment of the district court.

WILLIAM J. NARDINI, *Circuit Judge*, concurring in the judgment:

I respectfully concur in the judgment. In this appeal, we confront two primary questions of statutory construction. First, we must decide whether Aetna, as a Medicare Advantage Organization ("MAO"), may sue under 42 U.S.C. § 1395y(b)(3)(A), the private cause of action provision of the Medicare Secondary Payer Act ("MSP Act"), to seek reimbursement of its conditional payments for Nellina Guerrera's medical services. Second, we must determine whether Big Y, a self-insured tortfeasor, may be sued under that same provision (the "Private Cause of Action Provision") because Big Y is a primary plan that is responsible for reimbursing Aetna for these payments. In a thoughtful opinion, my colleagues in the majority conclude, based on "the plain text of the MSP Act and the statutory scheme," Maj. Op. at 21, that the Private Cause of Action Provision authorizes Aetna to sue, and Big Y to be sued.

I would arrive at the same destination by a somewhat different path. My colleagues' construction of the statute is not foreclosed by its text and context, and it is aligned with congressional purpose, for all the reasons they state. But unlike my colleagues, I still find the Private Cause of Action Provision to be ambiguous with respect to the two questions before us. The key to resolving this ambiguity lies with regulations promulgated by the Centers for Medicare and Medicaid Services ("CMS") that plainly authorize Aetna to sue and Big Y to be sued in these circumstances. These regulations fit comfortably within the range of reasonable interpretations of the MSP Act, and so I would simply defer to the CMS regulations in light of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Although the majority finds the Private Cause of Action Provision unambiguous, I confess that I do not see the clarity. That provision states:

> There is established a private cause of action for damages (which shall be in an amount double the amount

otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(B)(3)(A).  The provision does not identify who may sue under the "private cause of action" it establishes.  It also does not explain when a "primary plan" should be deemed responsible for "primary payment (or appropriate reimbursement)" such that it can be sued.  In short, the statute does not tell us who can sue or be sued. It is like reading a sentence with no subject or direct object.  (Or more precisely, no subject and an ill-defined direct object.)

As my colleagues observe, the open-ended statutory text does not expressly limit which private actors may seek reimbursement for a conditional payment.  I therefore agree that it provides no basis to *exclude* MAOs from the private cause of action it creates.  But this does not dictate the result that MAOs are affirmatively *included*.  A wide range of private actors might fit within the statute, but I am not prepared to say that the statute unambiguously authorizes all of them

to sue. Instead, I read the Private Cause of Action Provision's far-reaching but vague language to suggest only that Congress has not "directly spoken to the precise question" of who may sue. *Chevron*, 467 U.S. at 842.

I am also not persuaded that the Private Cause of Action Provision's cross-references to 42 U.S.C. § 1395y(b)(1) ("Paragraph (1)") and 42 U.S.C. § 1395y(b)(2)(A) ("Paragraph (2)(A)") provide the necessary clarity. On the first question—who may sue—my colleagues suggest that because Paragraph (2)(A) applies to the entire Medicare Act, including the part that gives Medicare-eligible persons the option to receive benefits through MAOs, it, like the Private Cause of Action Provision itself, "does not operate to *exclude* MAOs from utilizing the private cause of action." Maj. Op. 17 (emphasis added). I agree. But, for the reasons discussed in the preceding section, it does not necessarily follow that Congress has *included* MAOs in the class

4

of private actors who may sue under the Private Cause of Action Provision.[1]

On the second question, I agree with my colleagues that the broad definition of "primary plan" under Paragraph (2)(A) encompasses Big Y as a self-insured tortfeasor. Like the majority, I cannot accept Big Y's argument that the cross-reference to Paragraph (1) in the Primary Cause of Action Provision dictates that only group health plans may be sued as primary plans under that provision. However, that Big Y is clearly a "primary plan" under the plain text of the MSP Act does not fully answer the question of whether Big Y

---

[1] I note, of course, that my colleagues in the majority are not alone in reaching this conclusion. The Third Circuit has held that, among other things, the Private Cause of Action Provision and Paragraph (2)(A) unambiguously provide an MAO with a private cause of action. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 359–360 (3d Cir. 2012). The Eleventh Circuit has similarly held that Paragraph (2)(A), Paragraph (2)(B) (discussed *infra*), and the Private Cause of Action Provision "work together to establish a comprehensive MSP scheme" in which an MAO may avail itself of a private cause of action. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1237 (11th Cir. 2016). In my view, however, the broad language of the MSP Act necessitates an examination of whether the CMS regulations fill in the details left open by Congress based on a "permissible construction of the statute." *Chevron*, 467 U.S. at 843.

5

may be sued under the Primary Cause of Action Provision. That is because this provision establishes a private cause of action "in the case of a primary plan *which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).*" 42 U.S.C. § 1395y(B)(3)(A) (emphasis added). Neither Paragraph (1) nor Paragraph (2)(A) explains the circumstances under which a primary plan like Big Y would be responsible for reimbursing a private actor like Aetna.

For the necessary explanation, my colleagues look to the text of 42 U.S.C. § 1395y(b)(2)(B)(ii) ("Paragraph (2)(B)(ii)"), which is not cross-referenced in the Primary Cause of Action Provision. In pertinent part, Paragraph (2)(B)(ii) provides:

> [A] primary plan . . . *shall reimburse the appropriate Trust Fund for any payment made by the Secretary* under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by . . . a payment conditioned upon the recipient's compromise, waiver, or

6

> release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added). It seems to me that Paragraph (2)(B)(ii) describes the circumstances under which primary plans are responsible for reimbursing governmental entities, as opposed to private actors such as Aetna. Therefore, I do not read Paragraph (2)(B)(ii) to conclusively determine whether Big Y is responsible for reimbursing Aetna, such that it may be sued under the Private Cause of Action Provision.

Because the text of the MSP Act is ambiguous with respect to whether Aetna may sue or Big Y may be sued in circumstances like these, we must ask whether the relevant agency has given answers that are "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Here, CMS is the agency with the "congressional authority to promulgate rules and regulations interpreting and implementing Medicare-related statutes." *In re Avandia Mktg., Sales*

7

*Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 366 (3d Cir. 2012) (citing, *inter alia*, 42 U.S.C. § 1395hh(a)(1); 42 U.S.C. § 1395w–26(b)(1)). The regulations promulgated by CMS, unlike the text of the MSP Act, squarely address the two questions this appeal presents.

First, the CMS regulations make it clear that MAOs are proper plaintiffs with respect to the Private Cause of Action Provision. Specifically, 42 C.F.R. § 422.108(f) provides that an "[MAO] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." The regulations in subpart B map out how, when, how much, and from whom the Secretary can recover upon making a conditional payment. *See* 42 C.F.R. §§ 411.20 to -.39; *see also Avandia Mktg.*, 685 F.3d at 366 ("The plain language of this regulation suggests that the Medicare Act treats MAOs the same way it treats the Medicare Trust Fund for purposes of recovery from any primary payer.").

Second, the CMS regulations make it clear that Big Y, as a primary payer, is responsible for reimbursing Aetna. Particularly, 42 C.F.R. § 411.22(b), which is located in subpart B, states:

> A primary payer's responsibility for payment may be demonstrated by . . . [a] payment conditioned upon the beneficiary's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary payer or the primary payer's insured; or . . . [b]y other means, including but not limited to a settlement, award, or contractual obligation.

This regulation reflects analogous language in Paragraph (2)(B)(ii). Unlike Paragraph (2)(B)(ii), however, 42 C.F.R. § 411.22(b) contains no *additional* language signifying that it applies only to reimbursement of governmental entities. Instead, 42 C.F.R. § 411.22(b)—read in conjunction with 42 C.F.R. § 422.108(f)—describes the circumstances under which primary payers can be responsible for reimbursing MAOs. I conclude that, under these regulations, the undisputed facts of (1) Guerrera's claim against Big Y, (2) Big Y's monetary settlement

of that claim, and (3) Big Y's knowledge of Aetna's lien make Big Y responsible for reimbursing Aetna.

The CMS regulations should be afforded "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. For many of the reasons the majority relies on to interpret the statutory text, I find that these regulations exist within the range of "reasonable interpretation[s]" of the MSP Act. *Id.*

For example, although the sweeping language of the MSP Act does not, by itself, convince me that the statute authorizes an MAO to sue to recoup its conditional payment, that language does weigh in favor of the reasonableness of the CMS regulations. Precisely because the Private Cause of Action Provision is so open-ended with regard to who may sue, it cannot be said that the regulations' inclusion of MAOs is contrary to the statute.

Moreover, although the majority's discussion of congressional intent does not persuade me that the *only* permissible interpretation of the MSP Act is that a MAO is a proper plaintiff under the Private Cause of Action Provision, I agree that congressional intent suggests that such an interpretation—as adopted by the regulations—is reasonable. As my colleagues point out, Congress created the MAO program to stimulate innovation and ultimately create a more efficient and cost-effective healthcare system by encouraging competition with traditional Medicare plans. Maj. Op. 18–20. "It would be impossible for MAOs to stimulate innovation through competition if they began at a competitive disadvantage" because they were unable to recover directly from responsible primary payers in the same way traditional plans are. *Avandia*, 685 F.3d at 363. Therefore, CMS regulations authorizing MAOs to sue under the Private Cause of Action Provision accord with congressional intent by helping to facilitate MAOs' ability to compete. Indeed, CMS itself has

11

noted that MAOs "that faithfully pursue and recover from liable third parties will have lower medical expenses," resulting in an additional edge in a competitive marketplace. Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs, 75 Fed. Reg. 19678, 19797 (Apr. 15, 2010). This supports the conclusion that the regulations embody reasonable interpretations of the MSP Act.

In sum, I agree with my colleagues that the district court's judgment should be affirmed, although I would reach that conclusion based on deference to reasonable CMS regulations that tell us who can sue and be sued. I therefore respectfully concur in the judgment.